[Civ. No. 400. First Appellate District.—December 12, 1907.]

## C. E. MYERS, Respondent, v. SILAS T. KENYON et al., Appellants.

QUIETING TITLE TO ALLEYWAY—DEDICATION AND USE—SUPPORT OF FINDINGS.—In an action by the owner of a lot bordering on an alleyway to quiet his title to a right of way over the same against a successor of the original owner, who had closed up the same, it is held that findings to the effect that the land was dedicated as an alleyway by the original owner in 1883, and that ever since plaintiff has openly, notoriously, continuously, under a claim of right so to do, and adversely used the strip of land as an alleyway for ingress and egress to and from the lot of land owned by plaintiff, are fully supported by the evidence, and that an order denying defendant's motion for a new trial should be affirmed.

ID.—SALE OF LOTS WITH ALLEYWAY PRIVILEGES—ERECTION OF HOUSES WITH REAR GATES ON ALLEYWAY—REFERENCE TO MAPS—ESTOPPEL. Where the original owner of the block subdivided it into lots, on which he built houses with rear gates opening on an alleyway eighteen feet wide, and sold the houses and lots with reference to the alleyway, as shown to purchasers on a map and platted in a book of maps kept in his office, and at all times thereafter it was continuously used as an alleyway for ingress and egress by all the residents on the block, the owner would be estopped from afterward asserting title to the alleyway and closing it up as a right of way.

ID.—PURCHASER PUT UPON NOTICE SUBJECT TO BURDEN.—A purchaser of the alleyway from the original owner would be put upon notice of the use of the alleyway by all the residents of the block, and must take title thereto subject to the burden of the rights of way imposed upon it by the former owner.

ID.—EVIDENCE—ACTS AND CONDUCT OF ORIGINAL OWNER.—In the action to quiet title, evidence was admissible to show the acts and conduct of the original owner with reference to buildings upon the

lots, back gates, and the showing of the maps and the statements made by him to intending purchasers.

ID.—BOOK OF MAPS IN POSSESSION OF ATTORNEY FOR ESTATE OF FORMER OWNER—DELIVERY BY WIDOW NOT PRIVILEGED.—Where the book of maps kept by the former owner was delivered to the attorney for his estate by his widow, such delivery was not a ''privileged communication,'' but merely went to the identity of the book; and it was not error to receive the evidence of the attorney to identify the book of maps on which the alleyway was shown.

APPEAL from an order of the Superior Court of the City and County of San Francisco, denying a new trial. M. C. Sloss, Judge.

The facts are stated in the opinion of the court.

Stoney, Rouleau & Stoney, H. B. Montague, and A. S. Newburgh, for Appellants.

Edward F. Treadwell, for Respondent.

COOPER, P. J.—This action was brought to quiet the plaintiff's title to a right of way over a strip of land eighteen feet in width, the fee of which is in defendants. Defendants deny that the plaintiff is the owner of the right of way, and ask to have their title quieted as against the plaintiff. Findings were filed, upon which judgment was entered for plaintiff. This appeal is from an order denying the defendants' motion for a new trial.

The question is as to whether or not the plaintiff is the owner of the alleged right of way. The court finds in effect that the defendants' predecessors and grantors dedicated the said strip of land as an alleyway about the year 1883, and that ever since the plaintiff has openly, notoriously, continuously and peaceably, under a claim of right so to do, and adversely, used said strip of land as an alleyway for ingress and egress to and from the lot of land owned by plaintiff and particularly described in the complaint.

The findings are fully supported by the evidence, which we do not deem necessary to state in detail.

Prior to the year 1883, one Comerford was the owner of Horner's Addition Block 94, in the city and county of San Francisco, bounded by Duncan and Twenty-seventh, Church

7 Cal. App.—8

and Sanchez streets, and was engaged in the business of building houses and selling them. He subdivided this block into lots fronting on Duncan and Twenty-seventh streets one hundred and five feet deep, which left a strip of land running through the block from Church to Sanchez street eighteen feet wide, cutting the block in the center, the lots on the north side of the alley fronting on Twenty-seventh street, and those on the south side fronting on Duncan street. Comerford built houses on the block, the back fences of the lots being on the line of the alleyway, with gates opening thereon. Each house so built covered the entire width of its lot, and had a back gate for an exit into the alleyway, or for an entrance from the alleyway. Comerford sold the lots with reference to this alleyway after he had so laid out the lots with the alleyway eighteen feet wide, and stated to purchasers of the lots that the alleyway would be convenient for the owners. When plaintiff purchased his lot he was shown a map in Comerford's office, on which the alleyway was laid out and platted. Comerford had a book in which he had all his property in San Francisco platted, and in which this block was platted with the alleyway laid out and marked ''Comerford street.'' The alleyway, after being so opened, laid out and platted, was at all times used, and has up to the present time been used, continuously by plaintiff and by all the other residents of the block, as an open alleyway, without let or hindrance, and with no objection from Comerford during his lifetime. The owner of the block of land having subdivided it into fifty lots, leaving an alleyway through the center, twenty-five lots on each side of it, and having sold the lots with reference to the map and alleyway, and received the money therefor from the purchasers of the lots, would be estopped from afterward asserting title to the alleyway and closing it up as a right of way. Having left it open and upon the map while selling the lots, and receiving the money, he must continue to leave it open afterward. Common honesty would require of such owner that he should not deceive or mislead any purchaser or sell him a lot under false pretenses. If, after the lots were sold, the owner could change his mind and close the ends of the alley, and use it as a stock corral, the owners of the lots would find their back gates opening into the corral. The law

will compel the owner to keep the alleyway open for the use of the owners of the lots in such case. It must follow that all subsequent purchasers would purchase with notice. One cannot purchase the land covered by such alleyway, with a line of houses on each side of it, and gates opening into it, it being in continual use every day, without opening his eyes and looking. In such case he cannot claim to be an innocent purchaser. He would get the title in fee to the land, but subject to the burden imposed upon it by the former owner. It needs no citation of authorities to sustain the principles here stated.

The defendants claim that the court erred in the admission of certain evidence referred to in exceptions 2 to 9 inclusive. The evidence related to the acts and conduct of Comerford, in 1883, with reference to buildings upon the lots, back gates, maps and statements to intending purchasers. The evidence was admissible, and went to the very essence of the plaintiff's case.

It was not error to receive the evidence of the witness Drum, for the purpose of identifying a book of maps in his possession as attorney for the estate of Comerford, deceased. The book contained the map of the block on which the alleyway was marked and laid out by Comerford in his lifetime. The fact that the map existed, that it was a map delivered to the witness by the widow of the deceased, went to its identity, and the "delivery of the map was not a privileged communication from client to attorney." It would be a strange doctrine that a client could deliver a map, deed, contract, or other document into the hands of his attorney, and then prevent such map or other document from ever being brought to light or produced, for the reason that such delivery was a privileged communication.

No other question is raised that merits discussion.

The order is affirmed.

Kerrigan, J., and Hall, J., concurred.